**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ENKA RENEWABLES, LLC,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**GEORGIA,**<br><br>**Respondent.** | ) | **Case No. 25-cv-00125 (APM)** |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Petitioner Enka Renewables, LLC ("Enka") seeks to enforce an arbitration award against Respondent Georgia pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the "New York Convention." An arbitral tribunal found Georgia breached its commitments to Enka under an agreement called the Build, Own, and Operate Agreement ("BOO Agreement") and awarded it approximately $350 million plus interest.

Before the court are Georgia's Motion to Dismiss or Deny Confirmation of Foreign Arbitral Award or, in the Alternative, Stay Proceedings, ECF No. 19, and Enka's Cross-Motion for Summary Judgment, ECF No. 22. For the reasons explained below, the court denies Georgia's motion and grants Enka's cross-motion.

## II. BACKGROUND

### A. Underlying Dispute and Procedural History

The dispute arises from an agreement—the BOO Agreement—between Georgia and Enka to develop a hydroelectric complex project in parts of Georgia. Pet. to Recognize and Enforce

Foreign Arbitral Award, ECF No. 9 [hereinafter Pet.], ¶ 2. Project development stalled repeatedly due to public opposition over its social and environmental risks. Georgia's Mot. to Dismiss or Den. Conf. of Foreign Arbitral Award or, in the Alt., Stay Proceedings, ECF No. 19 [Resp't's MTD], Stmt. of P&A in Supp. of Resp't's MTD, ECF No. 19-1 [hereinafter Resp't's MTD Mem.], at 6. Enka eventually terminated the agreement citing Georgia's material failure to comply with its obligations, including failure to ensure access to the project site. *Id.* at 6–7; Pet. ¶ 10. Georgia denied breaching its obligations. Pet. ¶ 10. Pursuant to the agreement, Enka transferred the project assets to Georgia at a value it assessed as "fair market." Resp't's MTD Mem. at 7. Georgia disagreed with the valuation and declined to pay Enka. *Id.*

As permitted under the BOO Agreement, Enka filed a request for arbitration in the International Court of Arbitration of the International Chamber of Commerce. Pet. ¶ 11. A three-person tribunal convened in Paris, France, in May 2022. Resp't's MTD Mem. at 7. After two years of proceedings, the tribunal ruled in favor of Enka, finding that "Georgia was in material breach of the BOO Agreement, that Enka was entitled to terminate the agreement, and that Georgia was liable to pay Enka the fair market value of the project assets transferred to Georgia upon termination" of the agreement. Pet. ¶ 11; Pet., Ex. A, ECF No. 9-1 [hereinafter Award], ¶ 884. It awarded Enka approximately $350 million with interest based on the U.S. Federal Reserve Secured Overnight Financing Rate, plus four percent. Pet. ¶ 11; Award ¶ 884. The panel issued an addendum in January 2025 to address a typographical error in the Award. Resp't's MTD Mem. at 9; Pet., Ex. B, ECF No. 9-2.

In early January 2025, Georgia sought annulment of the Award and addendum before the Court of Appeal of Paris. Resp't's MTD Mem. at 9; Resp't's MTD, Ex. 6, ECF No. 19-8, ¶ 54. Enka filed this suit shortly thereafter. *See generally* Pet. In March 2025, Enka filed an

interlocutory motion in the annulment proceedings to have the Award recognized and enforced in France. Resp't's MTD Mem. at 10. Hearings on both the annulment petition and the interlocutory motion were scheduled for July and October 2025. *See id.*

In October 2025, Georgia moved to dismiss or deny confirmation or, alternatively, to stay these proceedings. *See* Resp't's MTD Mem. at 32. Enka thereafter opposed and filed its Cross-Motion for Summary Judgment. *See* Enka's Cross-Mot. for Summ. J., ECF No. 22 [hereinafter Pet'r's Mot.], Enka's Mem. of Law in Opp'n to Resp't's MTD, ECF No. 22-1 [hereinafter Pet'r's Cross-Mot. for Summ. J. Mem.].

## III. LEGAL STANDARD

The New York Convention is a multilateral treaty that provides for signatory states' "recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought[.]" New York Convention art. I(1), *opened for signature* June 10, 1958, 21 U.S.T. 2517. The United States is a signatory and "appl[ies] the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State." *Id.* art. I(3). Congress implemented the New York Convention in Chapter 2 of the Federal Arbitration Act. *See* 9 U.S.C. §§ 201–208.

"Confirmation proceedings under the Convention are summary in nature." *Argentine Rep. v. Nat'l Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011). They require a district court to confirm "an arbitral award falling under the Convention" unless "it finds one of the grounds for refusal or deferral" enumerated in the treaty. 9 U.S.C. § 207. A district court carries "little discretion in refusing or deferring enforcement of foreign arbitral awards," except for those grounds "explicitly

set forth in Article V of the Convention." *Belize Soc. Dev't v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012).

## IV. DISCUSSION

As its opening salvo, Georgia argues that the petition should be dismissed based on grounds of *forum non conveniens*. Resp't's MTD Mem. at 10–13. It contends that Georgia is the more convenient forum. *See id.* Alternatively, Georgia requests a stay pending the outcome of the proceedings before the Court of Appeal of Paris. *Id.* at 28–29. Finally, Georgia raises defenses against recognition of the Award. Georgia asks the court to refuse the Award because (1) there were fundamental procedural defects in the arbitration proceedings and (2) enforcing the Award would contravene U.S. principles of public policy. *See* Resp't's MTD Mem. at 14–27. The court takes each of these arguments in turn.

### A. *Forum Non Conveniens*

The court quickly disposes of the request for dismissal. "[B]inding circuit precedent dictates that '*forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States.'" *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1105 (D.C. Cir. 2024). Georgia concedes this is the law in this circuit. Resp't's MTD Mem. at 12–13. Georgia's motion to dismiss is therefore denied.

### B. Stay Request

So, too, is the request for a stay. In evaluating a stay request like Georgia's, courts consider at least two factors: "(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation; and (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved." *LLC SPC Stileks v. Rep.*

*of Moldova*, 985 F.3d 871, 879–880 (D.C. Cir. 2021). Both factors in this case weigh in favor of deciding the petition now. Enka initiated the arbitration proceedings nearly four years ago. Pet'r's Cross-Mot. for Summ. J. Mem. at 29. "Four years" is a "length of time that courts often consider long enough to justify immediate enforcement." *Venco Imtiaz Constr. Co. v. Symbion Power LLC*, No. 16-cv-1737 (JDB), 2017 WL 2374349, at *6 (D.D.C. May 31, 2017). Further, the Court of Appeal of Paris held its final hearing in October 2025 and has yet to issue a decision, *see* Resp't's MTD Mem., and there is no telling when it will do so. Georgia nevertheless urges a stay because, "[i]f the Award is annulled [by the Paris court,] . . . Article V(1)(e) of the New York Convention provides an independent ground to refuse recognition and enforcement of the Award in the United States." Resp't's MTD Mem. at 29, 3. Perhaps so, but indefinitely delaying adjudication of enforcement based on the uncertain prospect of Georgia's success would be inconsistent with the objectives of the New York Convention. *See LLC SPC Stileks*, 985 F.3d at 879–880. The court therefore rejects the stay request.[1]

### C. Georgia's Defenses under the New York Convention

#### *1. Georgia's Presentation of its Case (Article V(1)(b))*

Turning now to its asserted defenses under the New York Convention, Georgia first argues that the tribunal violated due process standards because it did not afford it the opportunity "to be heard in a meaningful manner" when determining the Construction Risk Premium in "its calculation of damages." Resp't's MTD Mem. at 16. The Construction Risk Premium is the discount rate used "to account for the risks of rising construction costs and schedule delays of the

[1] Georgia also argues that these proceedings should be stayed pending the Supreme Court's decision to grant certiorari in *Kingdom of Spain v. Blasket Renewable Invs.*, No. 24-1130 (U.S. May 1, 2025), a case involving Spain's invocation of the *forum non conveniens* doctrine. Resp't's MTD Mem. at 29–30. That request is now moot, as the Supreme Court denied certiorari in June 2026. *See Kingdom of Spain v. Blasket Renewable Invs. LLC*, No. 24-1130, 2026 WL 1855038, at *1 (U.S. June 29, 2026).

Project." *Id.* at 18. Georgia complains that the tribunal "directed the parties' experts to produce a joint model" and expert report "without input from the parties" to calculate the damages owed to Enka. *Id.* at 16–17. Furthermore, Georgia protests how the tribunal selected the Construction Risk Premium. Each side advocated a different Construction Risk Premium: Enka requested a 0% premium, and Georgia asked for a 1% premium, resulting in a difference of more than $100 million in damages. *Id.* According to Georgia, the tribunal applied a "rigid binary approach" and ultimately selected the 0% premium, "without considering whether an intermediate figure for the Construction Risk Premium was appropriate, and without giving Georgia any meaningful opportunity to be heard on the propriety of the binary approach." *Id.* at 18–20. So, according to Georgia, it was denied the opportunity to be heard for two reasons: one, because the expert report was prepared without its input and two, because it could not comment "on whether the Tribunal's discretion to determine the Construction Risk Premium should be limited to choosing between one of the experts' proposed rates, or else determining another rate." *Id.*

A court may deny confirmation under Article V(1)(b) of the New York Convention if the "party against whom the award is invoked" was "unable to present [its] case." New York Convention, art. V(1)(b). This provision requires arbitrators to "'provide a fundamentally fair hearing.'" *Metro. Mun. of Lima v. Rutas De Lima S.A.C.*, 141 F.4th 209, 221 (D.C. Cir. 2025) (quoting *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997)). The "party seeking vacatur of an arbitration award must establish that (1) the arbitrator committed some error, and (2) the error made a difference." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 160 (D.C. Cir. 2021). "The requirements for a successful Article V(1)(b) defense are stringent." *Air Canada, Inc. v. Bolivarian Rep. of Venez.*, No. 24-cv-2249 (JDB), 2026 WL 2364365, at *8 (D.D.C. Aug. 14, 2026). Georgia does not satisfy this "stringent" standard.

In fact, Georgia acceded to the tribunal's proposal. The tribunal held a lengthy discussion to decide on the procedure it would use to calculate the fair market value of the transferable assets. *See* Resp't's MTD Mem., Ex. 12, ECF No. 19-14 [hereinafter Tribunal Tr.], at 81:1–103:12. Georgia was an active participant in these discussions, and it had every opportunity to voice any concerns about both the suggested joint model and joint expert report. *Id.* Ultimately, Georgia did not oppose the tribunal's proposal that "the experts submit the joint expert report without input from the parties." *Id.* at 94:22–99:21.

Georgia nevertheless contends that it "requested that each expert put in their own report on the joint model requested by the Tribunal." Resp't's Combined Reply Mem. in Supp. of Resp't's MTD and in Opp'n to Pet'r's Mot., ECF No. 28 [hereinafter Resp't's Reply], Resp't's Resp. to Pet'r's Stmt. of Material Facts and Stmt. of Add'l Facts, ECF No. 28-1 [hereinafter Pet'r's SMF], at 16 ¶ 13. That is inaccurate. Georgia's counsel voiced "[n]o strong objection" to the "joint expert report." Tribunal Tr. at 91:11-16. Nor did he take exception to the tribunal's proposal to have the experts submit the report without party input. *Id.* at 94:22–99:21. As to the "request" that "each expert put in their own report on the joint model," that is best characterized as a suggestion concerning "efficienc[y]," and counsel ultimately left it in the "[tribunal's] hands." *Id.* at 91:11-16. Georgia cannot now cry foul when it accepted the tribunal's joint-report proposal. *See Enron Nigeria Power Holding, Ltd. v. Fed. Rep. of Nigeria*, 844 F.3d 281, 288 (D.C. Cir. 2016) (stating that "Article V(1)'s procedural defenses . . . can be waived").

Georgia's protest that the tribunal adopted a "rigid binary approach" to determine the Construction Risk Premium fares no better. Georgia received all the process it was due. It had every opportunity, in both writing and at oral argument, to advocate for its preferred outcome. *See* Tribunal Tr. at 94:22-24, 99:2-21. It urged a 1% premium. *See* Resp't's MTD, Ex. 11, ECF

No. 19-13 [Second Tribunal Tr.], at 257:1–258:8. Enka advocated for a 0% premium. Pet'r's SMF 8–9, ¶¶ 28–30. At no point did the tribunal, expressly or otherwise, advise the parties that it deemed itself bound to select one or the other. And Georgia never urged the tribunal to adopt a percentage less than one but greater than zero notwithstanding ample opportunity to do so. *See* Tribunal Tr. 100:1-12; *see generally* Resp't's MTD Mem. Having remained silent, Georgia cannot now complain about a deprivation of process.

Accordingly, Georgia has not shown that it was denied the opportunity to present its case on the appropriate Construction Risk Premium.

*2. Arbitral Procedure (Article V(1)(d))*

Georgia next invokes Article V(1)(d) of the New York Convention, which permits the refusal of recognition and enforcement of an arbitral award if "the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." *See* New York Convention, art. V(1)(d); Resp't's MTD Mem. at 21–24. As with Article V(1)(b), a district court's review is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 36–37 (D.D.C. 2016) (quotation marks omitted).

Georgia maintains that, under the BOO Agreement, the parties agreed to follow the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"). Resp't's MTD Mem. at 21. Article 19 of the 2021 ICC Rules states that "[t]he proceedings before the arbitral tribunal shall be governed by the Rules and, where the Rules are silent, by any rules which the parties or, failing them, the arbitral tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration." ICC Rules, art. 19. Georgia

contends that the parties did not have "an opportunity to comment on, much less 'settle on,' an approach to the proper calculation of the Construction Risk Premium, as envisioned by Article 19 of the ICC Rules." Resp't's MTD Mem. at 22. It did not agree to allow the tribunal "to limit its discretion to choosing between two expert propositions without involvement and comment from the Parties on such an approach and without the Tribunal being responsible for making its own decision about this aspect of 'fair market value.'" *Id.*

These arguments are largely a rehash of the Article V(1)(b) contentions the court has already rejected. The tribunal's approach to determining the Construction Risk Premium was not, as Georgia would have it, a *fait accompli*. The tribunal had extensive discussions with the parties about the process for making its determination. Tribunal Tr. at 81:1–99:25. And it gave them the chance to comment and advance any arguments after the experts proposed their joint model and joint report. *See id.* at 94:22–95:16; 99:1-21. Further, the tribunal did not "artificially restrict[] itself" to a "binary position[]," and it did not abdicate its "full discretion." Resp't's MTD Mem. at 22 (emphasis omitted). It considered the evidence and chose one of the two proposed rates that the parties had consistently advanced throughout the proceedings. Pet'r's SMF 8–9, ¶¶ 28–30. As discussed, Georgia never advocated for a fallback rate of less than one percent. Georgia has shown no violation of a rule or agreement of arbitral procedure.[2]

3. *Violation of U.S. Public Policy*

Georgia's final defense is an appeal to U.S. public policy. Under Article V(2)(b) of the New York Convention, "[r]ecognition and enforcement of an arbitral award may also be refused

[2] Georgia also asserts that the tribunal's approach to the Construction Risk Premium violated French law. *See* Resp't's MTD Mem. at 24. To support that contention, it points to the brief that it filed in the French courts. *See id.* That is a woefully inadequate means of establishing a violation of foreign law. *See Ganem v. Heckler*, 746 F.2d 844, 854 (D.C. Cir. 1984) ("Generally, written or oral expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is proved.").

if the competent authority in the country where recognition and enforcement is sought finds that . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country." *See id.* Here, Georgia argues that recognizing the Award would violate the U.S. "'public policy interest in respecting the right of other nations to control the extraction and [processing] of natural resources within their own sovereign territories.'" Resp't's MTD Mem. at 25 (quoting *Hardy Expl. & Prod. (India), Inc. v. Gov't of India*, 314 F. Supp. 3d 95, 110 (D.D.C. 2018)). As Georgia tells it, "the Tribunal essentially imposed liability on Georgia for taking such measures to mitigate and control the protests" that expressed concern over the "Project's social and environmental impact." *Id.* at 26. This "deprived Georgia of its sovereign rights, in violation of the well-established U.S. public policy demanding respect for these sovereign rights." *Id.* at 27.

"The public policy defense is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice." *Tatneft v. Ukr.*, 21 F.4th 829, 837 (D.C. Cir. 2021) (quotation marks omitted). "Such a public policy must be explicit and well defined and dominant, and is to be ascertained by reference to the laws and legal precedents." *Hardy Expl. & Prod.*, 314 F. Supp. at 109 (quotation marks omitted); *see also Enron Nigeria Power*, 844 F.3d at 287, 289 (stating that a party must both "identify a well-defined public policy" and show that the violation would "clearly . . . undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property"). "[C]ourts should rely on the public policy exception only 'in clear-cut cases.'" *Newco Ltd. v. Gov't of Belize*, 650 Fed. Appx. 14, 16 (D.C. Cir. 2016) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007)); *see also Enron Nigeria Power*, 884 F.3d at 289 (stating that the defense is "construed narrowly").

This is not a "clear-cut" case. The best Georgia can muster to establish that enforcement would violate the most basic U.S. notions of morality and justice is the district court decision in *Hardy Exploration & Production*, 314 F. Supp. 3d at 110. Resp't's MTD Mem. at 24–25. True, the court there recognized the "United States' public policy interest in respecting the right of other nations to control the extraction and processing of natural resources within their own sovereign territories." *Hardy Expl. & Prod.*, 314 F. Supp. at 110. But it did so with respect to an arbitral award that would have compelled a sovereign to allow the counterparty to extract natural gas at a location within its territory for a three-year period. *See id.* at 99, 101. It was in that "limited circumstance[]" that the court found "that enforcement of the *specific performance* portion of the arbitral award would violate United States public policy." *Id.* at 114 (emphasis added). Here, there is no specific performance component of the Award. It is solely a money judgment, and "[a] purely compensatory award does not violate United States public policy." *Doraleh Container Terminal SA v. Rep. of Djib.*, 656 F. Supp. 3d 223, 236 (D.D.C. 2023), *vacated and remanded on other grounds*, 109 F.4th 608 (D.C. Cir. 2024).

For these reasons, the court rejects Georgia's public policy defense.

## V. POST-JUDGMENT INTEREST

The parties dispute the proper post-judgment interest rate. Ordinarily, this percentage is governed by federal statute. *See* 28 U.S.C. § 1961(a) ("Interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment). Georgia asks the court to adopt the statutory rate. *See* Resp't's MTD Mem. at 30–31.

Parties, however, may contract and agree upon a different rate. *See e.g. OI Eur. Grp. B.V. v. Bolivarian Rep. of Venez.*, No. 16-1533 (ABJ), 2019 WL 2185040, at *6 (D.D.C. May 21, 2019). The agreement must contain "clear, unambiguous, and unequivocal language." *Id.* at *6 (citing *Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 102 (2d Cir. 2004)). Enka asserts that the BOO Agreement contains such a provision. Pet'r's Cross-Mot. for Summ. J. Mem. at 36–37. It provides that, "[i]f a Party defaults in the payment when due of any sum payable under this Agreement, it shall pay interest on that sum from the due date to the date of actual payment (after as well as before judgment), at the rate equal to [London Interbank Offered Rate ("LIBOR")] plus four percent (4%), which interest shall accrue from day to day and be compounded monthly." Pet'r's Mot., Ex. 1, ECF No. 22-4, at 61. The parties agreed to substitute the U.S. Federal Reserve Secured Overnight Financing Rate ("SOFR") for LIBOR after LIBOR was discontinued. *See* Pet'r's SMF at 11–12 ¶ 39 ("Georgia did not dispute Enka's assertion that it was entitled to compounded interest on any awarded amounts and did not object to Claimant's proposal to substitute SOFR for LIBOR"). The tribunal accepted this change. *See id.* at 12 ¶ 41.

The court agrees with Enka that the BOO Agreement supplies a post-judgment interest rate in "clear, unambiguous, and unequivocal language" that supersedes the statutory rate. The Agreement plainly provides that the agreed-upon rate applies "after as well as before judgment." Georgia's contention that the BOO Agreement contains "no mention of post-judgment interest," *see* Resp't's Reply at 21–22, is therefore incorrect. Accordingly, the court will award post-judgment interest at the rate of SOFR plus four percent, accruing from day to day and compounding monthly.

## VI. CONCLUSION

For the foregoing reasons, Georgia's Motion to Dismiss or Deny Confirmation of Foreign Arbitral Award or, in the Alternative, Stay Proceedings, ECF No. 19, is denied. Enka Renewables LLC's Cross-Motion for Summary Judgment, ECF No. 22, is granted.

Enka shall submit to the court a draft final order by September 18, 2026, which reflects the final Award sum plus accrued interest though that date.

Dated: September 11, 2026

Amit P. Mehta
United States District Judge